Paul **EGAN**, Plaintiff,

v.

CITY OF AURORA, a Municipality under the laws of the State of Illinois, Leo Boucon, William G. Konrad, H. A. Wyeth, Sr., William B. Robertson, Donald Curran, Hershell Stover, LeRoy Stroud, Anthony Rukas, John (Jack) Pfiefer, Ray Schuhow, John Day and Charles Darling, Defendants.

No. 58 C 2113.

United States District Court
N. D. Illinois, E. D.
June 10, 1959.

Jos. Keig, Sr., Sol R. Friedman, I. S. Friedman, Chicago, Ill., for plaintiff.

Reid, Ochsenschlager, Murphy & Hupp, Aurora, Ill., for defendants.

CAMPBELL, Chief Judge.

Plaintiff, Paul Egan, brings this action against defendants for alleged violation of the federal civil rights statutes, Title 42, U.S.C.A. §§ 1983 and 1985 and claims damages in the amount of $5,000,-000. Jurisdiction is based upon Title 28 U.S.C. §§ 1331 and 1343.

The substantial allegations of the complaint are as follows: Plaintiff, in his official capacity as Mayor of the City of Aurora, was conducting a public meeting before a group in excess of 200 people in the City Hall council chambers of the City of Aurora when defendant, Donald Curran, purporting to be acting as Chief of Police of the City of Aurora, and defendants, Hershell Stover, LeRoy Strand, ·Anthony Rukas, John (Jack) Pfiefer, Ray Schuhow and John Day, all purporting to act as police officers of the City of Aurora, laid their hands upon plaintiff, arrested him without warrant and without probable cause but purporting to act under color of an Illinois "breach of peace" statute (Ill.Rev.Stat. (1957)

c. 38, § 160), and "carried him by force of arms, physically from the rostrum on which he was speaking and incarcerated him in the city jail of the City of Aurora."

Plaintiff alleges that such action was taken as a result of a conspiracy to deprive plaintiff of his rights to freedom of speech and assembly under the Fourteenth Amendment of the United States Constitution between the above named defendants and defendants, Leo Boucon, William G. Konrad, H. A. Wyeth, Sr., and William B. Robertson, acting as individuals and as City Commissioners of the City of Aurora, and defendant, Charles Darling, purported Corporation Counsel of the City of Aurora.

Defendants have filed a motion to dismiss or in the alternative to strike on the grounds that the complaint fails to state a cause of action; that this Court lacks jurisdiction because plaintiff's claim is insubstantial, immaterial and made solely for the purpose of obtaining jurisdiction; and finally, that plaintiff's claim is frivolous.

Title 42 U.S.C.A. § 1983 provides as follows:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

Title 42, U.S.C.A. § 1985, also known as the "Ku Klux Klan section," provides a civil remedy against "two or more persons" who may conspire to deprive another of constitutional rights as therein defined.

It is a matter of well documented history that civil rights legislation passed shortly after the Civil War to combat "Black Codes," Ku Klux Klan activities and general State frustration of Negro rights was, for the most part, strictly construed through a series of cases which all but eradicated original Congressional intent. In re Slaughter-house Cases, 16 Wall. (83 U.S.) 36, 21 L.Ed. 394; United States v. Cruikshank, 92 U.S. 542, 23 L.Ed. 588; United States v. Harris, 106 U.S. 629, 1 S.Ct. 601, 27 L.Ed. 290; In re Civil Rights Cases, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835; Baldwin v. Franks, 120 U.S. 678, 7 S.Ct. 763, 32 L.Ed. 766; James v. Bowman, 190 U.S. 127, 23 S.Ct. 678, 47 L.Ed. 979.

These decisions not only narrowly interpreted the rights, privileges and immunities secured by the Fourteenth Amendment and restricted the protection of those rights to actions of a State but also declared certain of the Acts unconstitutional. Sections 1983 and 1985, historical remnants of the original legislation, created remedies today for violation of rights in the form of civil causes of action.

Though the original purpose of civil rights legislation was to secure the civil and political rights of Negroes, it is clear today that such legislation embraces the protection of basic civil and political rights of all persons within the jurisdiction of the respective States, whether citizens or not, from the abuse of State power. Such protected rights include, apart from political rights, the rights to a fair trial, including freedom from sham trials; to be free from arrest and detention by methods constitutionally forbidden and from extortion of property by such methods; from extortion of confessions; from mob action incited or shared by state officers; from failure to furnish police protection on proper occasion and demand; from interference with the free exercise of religion, freedom of the press, freedom of speech and assembly. Screws v. United States, 325 U.S. 91, 126, 65 S.Ct. 1031, 89 L.Ed. 1495; Culp v. United States, 8 Cir., 131 F.2d 93; Catlette v. United States, 4 Cir., 132 F.2d 902; United States v. Sutherland, D.C., 37 F.Supp. 344; United States v. Trierweiler, D.C., 52 F.Supp. 4.

■ It is likewise apparent that federal courts cannot be so overzealous in their desire to protect individual rights from State abuse that they unjustifiably deprive the States of their inherent sovereignty also protected by the United States Constitution. For these reasons, the federal courts, in applying the Civil Rights Acts have been consistently solicitous of "delicate state-federal relationships." Francis v. Lyman, 1 Cir., 216 F.2d 583, 588. In Screws v. United States, supra, 325 U.S. at pages 108, 109, 65 S.Ct. at page 1039, the Supreme Court stated with regard to the criminal counterpart of Section 1983:

"We agree that when this statute is applied to the action of state officials, it should be construed so as to respect the proper balance between the States and the federal government in law enforcement. Violation of local law does not necessarily mean that federal rights have been invaded. The fact that a prisoner is assaulted, injured, or even murdered by state officials does not necessarily mean that he is deprived of any right protected or secured by the Constitution or laws of the United States. * * * The Fourteenth Amendment did not alter the basic relations between the States and the national government. * * * Our national government is one of delegated powers alone."

In People ex rel. Turnbaugh v. Bibb, 252 F.2d 217, at pages 219 and 220, a case involving Section 1983, the Seventh Circuit Court of Appeals quoted with approval from an earlier case:

" * * * Federal jurisdiction is to be exerted only in exceptional cases involving such an emergency or great urgency as necessitate action to prevent irreparable injury. The jurisdiction to interfere with the proceedings of state government bodies charged with the prosecution and punishment of offenders is an exceedingly delicate one to be exercised with the greatest of care and nicest sense of propriety. In the absence of the exceptional circumstances mentioned, a sense of comity and due regard for state jurisdiction demand that the applicant be left to his remedies with the state courts who, no less than those of the United States, are charged with the obligation to recognize and protect his constitutional rights."

The Seventh Circuit Court of Appeals has expressed this philosophy in a number of other cases. Davis v. Foreman, 251 F.2d 421; United States ex rel. Atterbury v. Ragen, 237 F.2d 953; Ortega v. Ragen, 216 F.2d 561; Geach v. Moynahan, 207 F.2d 714; Miles v. Armstrong, 207 F.2d 284. Also see Collins v. Hardyman, 341 U.S. 651, 71 S.Ct. 937, 95 L.Ed. 1253; Snowden v. Hughes, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497; Spampinato v. M. Breger & Co., D.C., 166 F.Supp. 33; Smith v. Jennings, D.C., 148 F.Supp. 641.

■ Because of this "delicate federal-state relationship," the federal courts have been very strict in requiring a plaintiff to allege not only a denial of federal rights by the state but also that the denial was accomplished for the purpose of robbing plaintiff of those rights. Snowden v. Hughes, supra; Dye v. Cox, D.C., 125 F.Supp. 714; Jinks v. Hodge, D.C., 11 F.R.D. 346. Nor can such allegations merely state conclusions for as our Court of Appeals pointed out in Ortega v. Ragen, 7 Cir., 216 F.2d 561, 563:

" 'It is sufficient for us in this case to say: that * * * we disregard, as mere conclusions, the loose and general, the factually unsupported, characterizations of the complained of acts of the defendants, as malicious, conspiratorial, and done for the purpose of depriving plaintiffs of their constitutional rights; that the things defendants are alleged to have done, as distinguished from the conclusions of the pleaders with respect to them, do not constitute a deprivation of the civil rights of plaintiffs, do not give rise to the cause of action claimed; * * *.' "

Besides the area of federal-state relationships, the federal courts have also

been cognizant of another area upon which the broad language of the Civil Rights Acts might well trespass with ominous results. This is the area of common law immunity. In Tenney v. Brandhove, 341 U.S. 367, at page 376, 71 S.Ct. 783, at page 788, 95 L.Ed. 1019, the Supreme Court, in holding that members of a legislative investigating committee are immune under the Civil Rights Acts with regard to their official duties, made this statement:

"We cannot believe that Congress —itself a staunch advocate of legislative freedom—would impinge on a tradition so well grounded in history and reason by covert inclusion in the general language before us."

Following the lead of the Supreme Court in Tenney v. Brandhove, supra, the federal courts have declared on a basis of general law (See Nelson v. Knox, 6 Cir., 256 F.2d 312, 314) or on a basis of State law (See Charlton v. City of Hialeah, 5 Cir., 188 F.2d 421) that the Civil Rights Acts were not intended to abrogate totally the common law immunities which attached to broad categories of legislative, judicial and even administrative officials. While in their official capacities, complete immunity has been extended to judges (Kenney v. Fox, 6 Cir., 232 F.2d 288; Francis v. Crafts, 1 Cir., 203 F.2d 809), to superintendents of penal institutions (Francis v. Lyman, 1 Cir., 216 F.2d 583), and to police delivering prisoners to penal institutions (Dunn v. Gazzola, 1 Cir., 216 F.2d 709). Municipal council members and similar subordinate legislative bodies have been accorded qualified immunities. Nelson v. Knox, supra; Cobb v. City of Malden, 1 Cir., 202 F.2d 701. A series of cases have held that cities, in their sovereign capacities, are immune to suit for damages either under the theory that the Civil Rights Acts did not create a tort liability where none existed at common law or simply because the term "person" as used by Section 1983 does not include a municipal corporation. Cuiksa v. City of Mansfield, 6 Cir., 250 F.2d 700; Agnew v. City of Compton, 9 Cir., 239 F.2d

226; Cobb v. City of Malden, supra; Charlton v. City of Hialeah, supra; Graves v. City of Bolivar, D.C., 154 F. Supp. 625.

The broad language of the Civil Rights Acts has been further restricted by a practical apprehension which has perhaps been best stated by Judge Hand in Burt v. City of New York, 2 Cir., 156 F.2d 791 at page 793:

"The only protection at present is in the difficulty of proving such cases which is great; but, so far as we can see, any public officer of a state, or of the United States, will have to defend any action brought in a district court * * * in which the plaintiff, however irresponsible, is willing to make the necessary allegations."

In other words, how can the public officer who acts in good faith be protected from irresponsible, time-consuming, expensive litigation? There is no question but that this consideration has become a factor in the individual case. Agnew v. City of Compton, supra, 239 F.2d at page 231; Francis v. Lyman, supra; Cobb v. City of Malden, supra, 202 F.2d at page 707.

■ The courts are aware that we are living in a civil rights conscious era with an intense emphasis on individual rights and liberties which are in part guarded by the revitalized Civil Rights Acts. In my opinion it is imperative that federal courts use the greatest degree of discretion in dealing with cases of this nature to prevent an abuse of the broad language of the Civil Rights Acts and to achieve a healthy balance between individual, public official and State. The restrictive federal courts' policy induced by "delicate federal-state relationships" and common law immunities plays a major part in achieving this balance but more important at the moment, as I see it, is the increasing danger that civil rights legislation may be used as an abusive measure against public officials. Because the federal government has chosen to give a cause of action to an aggrieved

individual, under the Civil Rights Acts, it is incumbent on the federal courts to see that this federally created cause of action is not abused and therefore it is each judge's duty to protect public officials in the good faith performance of their duties from irresponsible litigation.

■■ In addition to being alert for possible abusive use of the Civil Rights Acts, the federal courts should also consider the need for federal supervision of the type of official conduct involved. Where the States have reasonably effective safeguards or remedies, a restrictive reading of the Acts is called for. The theory of the action should also be considered in deciding how strictly to construe the Acts. If the theory is merely one of tort then the Acts should be construed strictly but if the theory is to alter official conduct, a more liberal construction may be called for. If the action is for individual redress, then the Acts should be construed more strictly than in a broad class action which would be more in keeping with the philosophy of the Acts.

■ I now consider defendants' motion to dismiss for failure to state a cause of action. Though under certain circumstances, I would be prone to hold a city liable under the Civil Rights Acts, it seems obvious to me that this particular case is one which calls for strict construction. Therefore, I hold that no cause of action is stated against the City of Aurora under Section 1983 or Section 1985 because of the City's common law immunity. Cuiksa v. City of Mansfield, supra; Agnew v. City of Compton, supra; Cobb v. City of Malden, supra; Charlton v. City of Hialeah, supra; and Graves v. City of Bolivar, supra.

■■ As to plaintiff's allegation that a conspiracy exists between the police, City Commissioners and Corporation Counsel of the City of Aurora, I hold that this allegation is a mere conclusion, not supported by any allegations of fact and therefore does not state a cause of action under Section 1985. Ortega v. Ragen, supra. Since the Civil Rights Acts pro-

vide no remedy for the wrongful acts of individuals, I hold that the complaint does not state a cause of action against the City Commissioners in their individual capacities. United States v. Cruikshank, supra.

I hold that the complaint does not state a cause of action against the City of Aurora Police Chief and the enumerated police officers for the alleged seizure and incarceration of plaintiff which allegedly deprived him of freedom of speech and assembly in violation of Section 1983.

■ Plaintiff alleges that defendant, Donald Curran, "purported" to be acting as Chief of Police of the City of Aurora and that the other enumerated defendants "purported" to be acting as police officers of the City of Aurora. In other words, plaintiff has not alleged affirmatively that defendants were, or did act as police officials but on the contrary, by his pleadings, has implied that defendants were in fact not police officials of the City of Aurora. Since plaintiff has failed to allege affirmatively that defendants were, and acted as, police officials of the City of Aurora, the complaint does not state a cause of action under Section 1983. United States v. Cruikshank, supra. Also see Stift v. Lynch, 7 Cir., 267 F.2d 237.

However, even assuming that the complaint does state a cause of action, I would still have to dismiss the cause and grant judgment for defendants.

Defendants' exhibit "A," a "proclamation" issued by plaintiff, announcing the alleged meeting at which the alleged arrest took place, provides as follows:

"Whereas:

"A dire emergency exists in Aurora which might spread very conceivably throughout the world, when it is demonstrated openly and conclusively that the power of the people in the choice of their executive can be surmounted and destroyed to the great disadvantage of most of the people including those who did not vote for the head of the government and such blinking and ig-

noring the basic and vital things in Aurora, the State of Illinois and the Great formerly idealistic and marvelous Government of the United States of America, which from its inception until about 45 years ago was the almost holy light of downtrodden men everywhere, the inspiration for living to those who had faith in us and our ideals, principles and basic pronouncements were the hope of the world, in comparison we are now preserving vicious dictators, old corrupt and tottering governments and turning all of the wealth created by our ancestors and modern day potentialities in a mad race to keep factories working and a few all powerful against the interests, well being and now the very survival of every man, woman and child on this entire earth,

"I Therefore Proclaim a State of Emergency in Aurora, Illinois and ask every able-bodied citizen of this country, who does not have a criminal, insane or other special unsavory record, to come to the city hall council chambers at the city hall at 7 P.M., Tuesday night, Oct. 14, 1958 to see if the people can be heard and get a remedy from their ills as some of our predecessors did to throw off the yoke of absolute monarchy and potential slavery in their day. I will welcome all races, all creeds and even legally registered Communists are welcome if they are sincerely willing to help preserve our laws and bear arms for this purpose and to preserve our great heritage, priceless ideals, principals and purposes or rather *and this is important,* Come Back to Them, all races, creeds and colors are invited to 'bear arms,' as the Constitution provides in the protection and preservation of the law in Aurora and to let us once more be the City of 'Lights' which guides the way by attending this most important meeting in the history of Aurora."

Defendants maintain that plaintiff was attempting to incite a public disturbance and the invasion and capture of the duly constituted Police Department of the City of Aurora and that this "proclamation" plus the fact that the council chambers, packed with people, presented a public danger in the event of a disturbance, gave defendants probable cause to arrest plaintiff.

The affidavits of the parties reveal a desire for publicity on the part of plaintiff which is demonstrated by numerous acts such as, filing a number of actions in the Circuit Court of Kane County without prosecuting them; discharging twelve persons as Chief of Police of Aurora; appointing a young lady who was a publicity agent for certain Chicago liquor taverns, as Chief of Police; directing that his attorney telephone the President of the United States and the Governor of the State of Illinois upon his alleged arrest and incarceration. Of these and many more like acts of the plaintiff, I take judicial notice. Greeson v. Imperial Irr. Dist., 9 Cir., 59 F.2d 529, 531; Cyclopedia of Federal Procedure, Section 26.226.

Considering plaintiff's contention that he has been deprived of freedom of speech and assembly in violation of Section 1983, it is my opinion, in light of the plain uncontradicted facts of this case and the propensities of plaintiff as demonstrated by his past actions, that there is no cause of action under Section 1983. As Justice Brandeis stated in Whitney v. People of State of California, 274 U.S. 357, at page 373, 47 S.Ct. 641, at page 647, 71 L.Ed. 1095:

"Although the rights of free speech and assembly are fundamental, they are not in their nature absolute. Their exercise is subject to restriction, if the particular restriction proposed is required in order to protect the state from destruction or from serious injury, political, economic or moral."

The so-called "clear and present danger" doctrine lays down the requirement

that before an utterance can be penalized by government it must, ordinarily, have occurred "in such circumstances [or have been] of such nature as to create a clear and present danger" that it would bring about "substantive evils" within the power of the government to prevent. Schenck v. United States, 249 U.S. 47, 39 S.Ct. 247, 249, 63 L.Ed. 470. And " 'in each case (courts) must ask whether the gravity of the "evil," discounted by its improbability, justifies such invasion of free speech as is necessary to avoid the danger.' " Dennis v. United States, 341 U.S. 494, 510, 71 S.Ct. 857, 868, 95 L.Ed. 1137.

In regard to freedom of assembly it is well to remember that under the common law any assemblage was unlawful which aroused the apprehensions of "men of firm and rational minds with families and property there," and it is not unlikely that the First Amendment takes this principle into account. (See 9 New York Univ.L.Quart.Rev., 1–38.)

■ Granted then, that these rights, though preferred, are not absolute, it follows that no cause of action under Section 1983 is possible if there is a justified invasion of these rights. Furthermore, the purpose, history and construction of the Civil Rights Acts manifestly deny a cause of action under Section 1983 where a public officer, in good faith, invades the rights to freedom of speech and assembly because of an apparent justification. See Agnew v. City of Compton, supra, 239 F.2d at page 231. This construction is a necessary corollary to Section 1983 for to hold otherwise, as I have pointed out, would be to attribute a contradiction of purpose to the Civil Rights Acts.

■ In the case at bar, plaintiff not only issued a "proclamation" calling the alleged meeting and asking the people to "bear arms" in order to "throw off the yoke of absolute monarchy and potential slavery," but also carried this meeting into effect which removes the cause from the *in abstracto* theory of Yates v. United States, 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356. It is inconceivable that

men of "firm and rational minds" with knowledge of the propensities of plaintiff and the purpose of the alleged meeting should not be apprehensive. Clearly, on these facts, there was an immediate, apparent danger to the City of Aurora and since none of the facts indicate that defendants, Police Chief Curran and the enumerated police officers, acted for any other purpose than to protect the community in the good faith performance of their duties, the cause is dismissed. Judgment for defendants.