**Kelsey D. BARTLETT, Plaintiff,**

v.

**Dr. Joseph DUTY, Dr. J. M. Garland, Dr. James G. Bond, Dr. Miriam Bell, all of Toledo State Hospital, Dr. Charles Bohnengel, Dr. J. M. Kenyon, Defendants. Civ. A. No. 8140.**

United States District Court
N. D. Ohio, W. D.
June 23, 1959.

Kelsey D. Bartlett, in pro. per.

Spengler, Nathanson, Hebenstreit & Heyman, Otto H. Spengler, Dan H. Mc-Cullough, Toledo, Ohio, for Dr. Kenyon.

Mark McElroy, Atty. Gen., William M. Vance, Asst. Atty. Gen., for Drs. Duty, Garland, Bond and Bell.

Shumaker, Loop & Kendrick, Charles W. Peckinpaugh, Jr., John J. Barone, Toledo, Ohio, for Dr. Bohnengel.

WEICK, District Judge.

The complaint charges the defendants with conspiracy in causing plaintiff to

be falsely arrested and maliciously prosecuted in proceedings instituted in the Probate Court of Lucas County, whereby he was detained in a mental institution for a period of six days under a warrant of detention issued by said Court.

Plaintiff claims that his constitutional rights were invaded and brings this action under the Civil Rights Act. 42 U.S.C.A. §§ 1983, 1985 and 28 U.S.C. § 1343.

The defendants are the Superintendent of Toledo State Hospital, Toledo, Ohio, which was the institution designated by the Probate Court in the warrant of detention, three staff physicians of the hospital and two private physicians, who were medical witnesses appointed by the Probate Court to examine plaintiff.

Damages are sought in the amount of $100,000,000 and also a permanent injunction ordering the defendants "to cease all interest in plaintiff's 'mental health' and restraining them from instituting any such similar actions as taken herein."

The defendants have filed motions to dismiss on the ground that the complaint does not state a claim upon which relief can be granted and that the Court does not have jurisdiction over the subject matter of the action.

The plaintiff and all the defendants are residents of the State of Ohio.

The complaint has attached to it a copy of the order of the Probate Court. Briefs were filed by all the parties which contain statements of fact as well as arguments on the legal questions. Attached to plaintiff's brief is a copy of the opinion of the Court of Appeals of Marion County, Ohio, in a previous probate proceeding involving plaintiff. The Court will, therefore, treat the motions to dismiss as motions for summary judgment.

In the previous probate proceeding, above referred to, plaintiff's wife had filed in the Probate Court of Marion County, Ohio, an affidavit charging plaintiff with mental illness; thereafter, on April 15, 1954, he was committed to Columbus Receiving Hospital, Columbus, Ohio, as a mental incompetent by said Probate Court; thereafter he was transferred to Toledo State Hospital where he remained until April 12, 1955, when he was permitted to leave and go home on a trial visit; on June 23, 1955, he was found mentally competent by the same court which committed him and was ordered discharged.

Following his release, plaintiff filed a motion in the Probate Court of Marion County to set aside the order finding that he was an incompetent on the ground that the Ohio statutes relating to notice of the hearing had not been complied with. The Probate Court denied the motion, but on appeal to the Court of Appeals of Marion County, Ohio, the judgment of the Probate Court was reversed and the order adjudging plaintiff incompetent was vacated.

Plaintiff then filed an action in this Court, being Civil Action No. 7547 for damages in the amount of $2,500,000 against the Sheriff of Marion County, a physician from Marion, Ohio, five other physicians connected with Columbus Receiving Hospital, and Toledo State Hospital claiming that he had been deprived of his civil rights by said defendants in his commitment in 1954. An injunction was prayed for similar to the prayer in the case at bar.

The defendants in said prior action filed motions to dismiss which were sustained by this Court. Thereafter, on appeal, the Court of Appeals affirmed. Bartlett v. Weimer, 6 Cir., 244 F.2d 955, certiorari denied 355 U.S. 858, 78 S.Ct. 87, 2 L.Ed.2d 65.

Plaintiff has since been admitted to the Bar and filed the present action "in propria personae."

The brief of plaintiff filed in the present action contained innuendos concerning the Judge of this Court who heard the motions to dismiss in the prior case, which caused him to disqualify himself from hearing the present motions to dismiss. The fact that the Court of Appeals of this Circuit had affirmed the decision of this Court and certiorari was

denied by the Supreme Court of the United States did not deter the plaintiff from making the statements concerning the Judge, who merely performed his duty as he saw it.

Defendants Dr. Joseph Duty and Dr. J. M. Garland are staff members at the Toledo State Hospital, of which defendant Dr. Miriam Bell is the superintendent.

The complaint in the present case does not specifically state in what manner these defendants acted against the plaintiff, only charging them generally as being parties to the over-all conspiracy. This broad allegation is virtually a conclusion of law, in that no operative facts are pleaded showing in what manner these three physicians acted to deprive plaintiff of his constitutional rights. They did not institute the proceedings by which plaintiff was detained. Their only apparent possible connection with this controversy was the performance of their duties on the staff of the Toledo State Hospital where plaintiff was detained.

■ The evidence discloses that plaintiff was placed in the mental hospital by order of the Probate Court of Lucas County, pursuant to Ohio Rev.Code, §§ 5123.18 and 5123.19. The superintendent of a state mental hospital has the duty to receive and retain a patient under a warrant of commitment issued by the Probate Court. Ohio Rev.Code, § 5123.03 and § 5123.19. The members of the hospital staff are likewise required to perform their respective duties. No irregularity in the warrant of detention or other procedural defect in the proceedings in the Probate Court is alleged in the complaint.

The decision in Kenney v. Hatfield, D. C.Mich., 132 F.Supp. 814, affirmed 6 Cir., 1956, 232 F.2d 288, is controlling here. Faced with very similar facts, the Court stated:

"These defendants were required to receive the plaintiff at the hospital by virtue of the order of the Probate Court of Berrien County, and pursuant to the statutes of the State of Michigan. * * * The order is fair on its face and is one to which the defendants were required to be amenable. These defendants not only should not be expected, but should not be permitted, to go behind a court order, which appears on its face to be valid, and attempt to question the propriety of the entry of the order, in the case of the commitment of an alleged mentally ill person to an institution by which they are employed." 132 F.Supp. at page 818.

On the authority of the Kenney case no claim upon which relief may be granted is stated against these three defendants, and the complaint must be dismissed as to them. Accord: Bartlett v. Weimer, 6 Cir., 1957, 244 F.2d 955.

■ Defendants Dr. Charles Bohnengel and Dr. J. M. Kenyon are also alleged generally to have been parties to the conspiracy.

From Exhibit "A" to the complaint, it appears that these two doctors were appointed as medical witnesses by the Probate Court to examine plaintiff, pursuant to Ohio Rev.Code, § 5123.23. In so doing, they were acting as an arm of the Court.

■ The complaint fails to state a claim against these two defendants for following reasons:

First, they enjoy the same immunity as the physicians at the hospital, in that they were acting in the same manner. They were only carrying out a duty imposed upon them by the laws of the State of Ohio, under a valid court order, behind which they should not be required to look.

Second, acting as an arm of the Court, these defendants are entitled to enjoy the immunity afforded to the Court. They, therefore, are immune from a claim under the Civil Rights Act. Tenney v. Brandhove, 1951, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019; Kenney v. Fox, 6 Cir., 1956, 232 F.2d 288, 292; Francis v. Crafts, 1 Cir., 1953, 203 F.2d 809;

United States ex rel. McNeill v. Tarumianz, D.C.Del.1956, 141 F.Supp. 739.

The fact that the Court appointed physicians found plaintiff to be mentally ill and so testified in the Probate Court does not alter the rule even though the Probate Judge reached a different conclusion upon all the evidence. The Court appointed physicians were entitled to their own opinions and to testify to them.

If physicians appointed by the Probate Court as medical witnesses to examine a person thought to be mentally ill were liable to have their opinions drawn into question and held liable therefor in heavy damages, the Probate Court could never get any physician to accept such an appointment. If the Probate Judge who hears the case has immunity for his acts, the physicians, who are the arm of the Court, are certainly entitled to the same immunity.

Defendant Dr. James G. Bond, as a resident of Toledo, signed the affidavit which was filed in the Probate Court. Under Ohio Revised Code, § 5123.18 a resident of the county in which plaintiff resides may file the affidavit in the Probate Court for the admission to a state hospital of a person thought to be mentally ill. The order of the Probate Court recites:

"The 18th day of December 1957, James G. Bond, a resident citizen of 921 Searles Rd., Toledo, Ohio, in this county, appeared in open court and filed an affidavit in the form prescribed by law, for admission of Kelsey Bartlett into the Toledo State Hospital."

Although an employe of the state, Dr. Bond, in signing the affidavit, pursued a remedy afforded by the statute to private individuals.

There is no claim here that the plaintiff was denied any of his constitutional rights in the Probate Court proceedings. The record shows that the court decided the case in his favor.

In his arrest and detention prior to the hearing, plaintiff was treated no differently than any other person suspected of mental illness and charged therewith in the Probate Court.

No one discriminated against plaintiff or deprived him of the equal protection of the law or of the due process of law.

Plaintiff was not immune from the procedures under the Ohio statutes. Cf. United States ex rel. McNeill v. Tarumianz, supra.

Nor is there any claim that the Ohio statutes authorizing plaintiff's arrest and detention, prior to hearing, were unconstitutional.

The Probate Court conducted a prompt hearing within six days of plaintiff's arrest and ordered him discharged.

It would appear not only that the Ohio statutes fully protected the plaintiff, but he was granted due process of law in its fullest meaning.

Ohio Revised Code, § 5123.22 exempts from liability any person who acts in good faith in connection with the Probate proceedings.

■ Merely alleging a violation of constitutional rights does not confer jurisdiction on the District Court in the absence of diversity of citizenship. Almost every case of false arrest or malicious prosecution involves a claimed violation of an individual's constitutional rights.

Plaintiff has an adequate remedy in the state courts to obtain redress against the defendants which, it appears, he has already invoked against four of them.

■ Since no diversity of citizenship exists in this case, the Court has no jurisdiction.

■ Nor is there any basis for granting an injunction. The District Court would have no right to restrain citizens from exercising rights granted under state laws enacted for the protection of the public and of persons thought to be mentally ill.

Treating the motions to dismiss as motions for summary judgment, the same are granted and the complaint dismissed at plaintiff's costs.