Melvin H. GRAGG, Plaintiff-Appellant,

v.

The TRAVELERS INSURANCE COMPANY, a corporation, Defendant-Appellee.

No. 71–1249.

United States Court of Appeals, Tenth Circuit.

May 2, 1972.

Sam A. Townley, Oklahoma City, Okl., for plaintiff-appellant.

Burton J. Johnson, Watts, Looney, Nichols & Johnson, Oklahoma City, Okl., for defendant-appellee.

Before CLARK,* Associate Justice, and HILL and DOYLE, Circuit Judges.

Mr. Justice CLARK:

This is an appeal from a summary judgment entered against Appellant, Melvin H. Gragg, on his amended complaint alleging a breach of contract by Appellee, The Travelers Insurance Company, in the writing of a group hospitalization and surgical benefit insurance policy on 26,967 employees of the State of Oklahoma. We find that there is a genuine issue of material fact presented by the amended complaint, stipulation, and affidavit filed herein and that Travelers was not entitled to judgment as a matter of law. We therefore reverse the judgment and remand the case for further proceedings.

1. Gragg originally filed suit in the State District Court of Oklahoma County, Oklahoma, alleging that he requested the Manager of the Group Department of Travelers at Oklahoma City, Robert E. McCubbin, "to submit a Traveler's [sic] bid on his behalf as Agent, to the State Board of Public Affairs of the State of Oklahoma in response to an invitation to bid on group insurance covering employees of the State of Oklahoma. McCubbin agreed to submit such bid on behalf of plaintiff [Gragg] as agent, and the bid was duly submitted on October 11, 1967; and subsequently the State Board of Public Affairs directed that the bids on the insurance be re-submitted, and this bid was re-submitted on December 27, 1967, and accepted as the winning bid, and is designated as Group Policy GA–817350." It was further alleged that Gragg was entitled to a commission under the provisions of his agency contract with Travelers, which he attached to his complaint, and that he had made demand on Travelers for payment, which was refused. Gragg also claimed that the Policy was in effect until October 31, 1969, and that the premium paid Travelers on it exceeded $3,000,000. Gragg claimed a reasonable commission of 20 percent of the premium paid, i. e. $600,000 and costs. On Travelers' petition for removal and bond, the case was removed to the United States District Court for the Western District of Oklahoma on July 22, 1970.

2. Travelers' answer denied that Gragg "was an insurance agent as alleged for the purpose of writing 'Group and Employees Security Service Insurance'"; that it submitted a bid on behalf of Gragg; that the Agency contract attached to Gragg's complaint had any relevance to the matters alleged by him; that it agreed to pay a commission specifically as to the rate alleged or that it ever owed Gragg any commission on the policy involved.

Travelers further alleged that it "was obligated to submit . . . a bid" and that in submitting the same, it provided that the "State Employees Group Health Board should designate the agent, if any, which the Board wish to

* Associate Justice of the United States Supreme Court, Retired, sitting by designation.

have appear on said policy"; that it relayed such information to each of its agents "who appeared or who advised that an interest was manifested by said agents for the writing of said policy, and all of the agents [sic] names were delivered to the State Employees Group Health Board for their selection." It further alleged that the Board had never designated an agent and that Travelers was "without authority or right to now so select an agent arbitrarily for the purpose of paying a commission."

Travelers further alleged that "the agents are not engaged in the writing of the Group Insurance Plan type of insurance under the agency contracts" that Gragg appended to his Complaint, such coverage being expressly excluded under Paragraph II thereof.

Finally, Travelers alleged that it is in a position of trust and is estopped from "using its power to place benefits or commissions in preferred areas" and denied any "special relationship with plaintiff herein on any equitable basis for such commissions or interests complained in this action."

3. Gragg then filed his Amended Complaint in which he alleged a claim in the same language as his original complaint except that he omitted the allegation that he was entitled to a commission under his agency contract with Travelers but placed his claim entirely on his alleged agreement with McCubbin, Travelers' Manager. Travelers filed no answer to the Amended Complaint.

4. Thereafter, the parties stipulated that a listed group of documents are the documents upon which the Plaintiff's Cause of Complaint is predicated and upon which Travelers' defense is based. The stipulation provided that the documents "may be introduced and accepted into evidence by either party for the purposes of motions to be filed or the trial of any issues involved." These documents included Exhibits 1 and 2 which are copies of Travelers' original bids and its re-submitted bids indicating the 26,967 employees to be covered, estimating the premiums, which were of some $6,000,000 and suggesting an "illustrative" writing agent's commission of $8,369.00. In addition Travelers said it "would be prepared to pay such other commission as may be determined appropriate to any properly licensed agent or broker designated by the policyholder." Exhibit 3 is a letter from McCubbin to the Board dated October 9, 1967, in which he advised that Travelers would be willing to recognize an agent or broker designated by the Committee [of the Board]. "We have a large number of Travelers agents throughout the state, many of whom have expressed interest in the State Employees Group Plan . . . I felt that I should comment on this aspect of our bid in order that we may make clear our position with respect to agency designation." A list of Travelers "active" life, accident and health agent brokers and solicitors, including Gragg, was attached. Exhibit 4 is a letter from Gragg to the insurance buyer in which he advised that his "bid on Requisitions 3750 will be one and the same as that submitted by Travelers." Gragg further advised that McCubbin would name Gragg "either on the bid or in a letter attached as one of their agents submitting the Travelers Insurance Company's bid."

5. Travelers then filed its motion for summary judgment and, thereafter, Gragg filed his response. In it he claimed that a genuine issue of fact existed, i. e. whether McCubbin agreed to submit the subject bid of Travelers on behalf of Gragg as agent on the policy. Gragg then reiterated "that McCubbin agreed to submit the bid showing Plaintiff as an agent of defendant in the submission of the bid. Defendant denies such agreement by McCubbin with plaintiff in Paragraph II of its answer." Gragg then referred to the letters written by McCubbin and himself to confirm his conversation with McCubbin. Attached to the response was Gragg's affidavit in which he swore that he telephoned McCubbin on or about Septem-

ber 11, 1967, and "requested that Travelers submit a bid for group insurance to the State Board of Affairs . . . on requisition No. 3750 for a group hospitalization and surgical benefits insurance policy on 26,967 State of Oklahoma employees. McCubbin told me that he would name me either on the bid or in a letter attached to the bid as one of the agents of Travelers submitting that bid. Because of his agreement to submit my name as agent I refrained from seeking to have other bids submitted on my behalf by other companies on requisition No. 3750 and relied on this agreement with McCubbin."

6. The Court found that "there is no agency contract existing covering the matters submitted herein" and that Travelers "owed no duty to select one of its many agents for its submission of the bids . . . Both parties have stipulated that the State Employees Group Health Board did not designate an agent and that plaintiff's letter [to the State Insurance buyer] concurs that he did not purport to be the exclusive agent and in fact submitted an identical bid as that of the defendant . . .," and granted summary judgment.

7. We disagree with the learned Judge. Rule 56(c), Federal Rules of Civil Procedure [1] permits a summary judgment "only . . . where it is quite clear what the truth is," Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627, 64 S.Ct. 724, 728, 88 L.Ed. 967 (1944). And we must "look at the record on summary judgment in the light most favorable to . . . the party opposing the motion . . ." Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 473, 82 S.Ct. 486, 491,

7 L.Ed.2d 458 (1962). Also see United States v. Diebold, Inc., 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

"Moreover, the rule should be invoked cautiously," as was pointed out in Diplomat Elec. Inc. v. Westinghouse Elec. Supply Co.," 378 F.2d 377, 386 (5th Cir. 1967), "to the end that parties may always be afforded a trial when there is a bona fide dispute of fact between them." Again as was said in Gauck v. Meleski, 346 F.2d 433, 436 (5th Cir. 1965), "It is well settled that the court's duty is limited to determining whether factual issues exist, not in determining the issues themselves." Finally, as a distinguished trial judge (later on the Third Circuit) said in the contract case of Zig Zag Spring Co. v. Comfort Spring Corp., 89 F.Supp. 410, 413 (D.C. N.J.1950), "It is equally clear that the question as to whether or not there was a contract turns on the conclusions to be drawn from a series of letters considered together with the oral agreement, if any. Surely this situation will not support a determination that there is no genuine issue as to any material fact."

8. The stipulation covers documents that "may be introduced and accepted into evidence" only as the basis "upon which the plaintiff's cause of action is predicated and upon which Travelers defense is based." It is not an agreed statement of facts. The Court was obliged to look also to the pleadings and Gragg's affidavit as well as the stipulation. Taken as a whole, it is quite clear that there are genuine issues of fact remaining.

The major issue is, of course, whether McCubbin actually promised

1. Rule 56(c), Federal Rules of Civil Procedure.

    Summary Judgment: Motion and Proceedings Thereon.

    The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

Gragg that he would be named as one of the "writing agents" on the bid submitted to the State. Gragg's amended complaint states that McCubbin promised to submit a Travelers' bid "on [Gragg's] behalf *as agent*." (Emphasis supplied.) His affidavit in opposition to the motion for summary judgment states that McCubbin promised that "he would name [Gragg] as one of the agents of Travelers *submitting that bid*." (Emphasis supplied.) Travelers' communications with the State showed allowances for a "writing agent's commission" of over $8,000 a year, although it appears undisputed that no such writing agent has been designated by Travelers or the State. Whether McCubbin made any promise at all, and whether that promise was to name Gragg as a "writing agent" and therefore entitled to a commission, or merely as one of Travelers' many agents throughout the State not entitled to a commission, is an issue of fact that cannot be resolved on the pleadings. Suffice it to say that Gragg's affidavit sufficiently raised a genuine controversy that precluded the granting of a summary judgment.

The judgment is therefore reversed and remanded for further proceedings.