**Brian TAYLOR, Plaintiff,**

v.

**H. Michael NICHOLS et al., Defendants.**

**Civ. A. No. 75–40–C2.**

United States District Court, D. Kansas.

Feb. 11, 1976.

929

Clifford R. Roth, Matney & Roth, Overland Park, Kan., Michael Lerner and Barbara M. Vache, Barnett & Lerner, Kansas City, Kan., for plaintiff.

Roger D. Stanton, Weeks, Thomas, Lysaught, Bingham & Mustain, Overland Park, Kan., George A. Lowe, Lowe, Terry & Roberts, Olathe, Kan., for defendants.

## MEMORANDUM AND ORDER

O'CONNOR, District Judge.

This is a civil rights action pursuant to 42 U.S.C. §§ 1983, 1985, 1986, and 1988, in which the plaintiff seeks $500,000 in actual and punitive damages for the alleged violation of various constitutional rights. The case is now before the court for determination of the defendants' motions to dismiss for failure to state a claim upon which relief can be granted. Because certain matters, including exhibits and affidavits, have been presented to the court, we are compelled by Rule 12(b) of the Federal Rules of Civil Procedure to treat these motions as motions for summary judgment in accordance with Rule 56.

In considering a motion for summary judgment, the court must construe the pleadings liberally in favor of the party against whom the motion is made. *E. g., Gragg v. Travelers Ins. Co.,* 459 F.2d 418 (10th Cir. 1972); *Bushman Construction Co. v. Conner,* 307 F.2d 888 (10th Cir. 1962). For purposes of these motions, we therefore accept as true the following allegations, uncontested by the defendants, as set forth in the complaint. The actors in the factual scenario surrounding this action are the plaintiff, an officer on the Ottawa, Kansas, city police force; the defendant Michael T. Allen, an 18-year-old resident of that city; the defendant James Allen, Michael's father; the defendant R. Michael Latimer, a private attorney for the Allens and a special prosecutor for Franklin County, Kansas—in which Ottawa is located—from February 3 to March 3, 1975; the defendant Robert L. Pinet, county attorney for Franklin County; the defendant

H. Michael Nichols, presiding judge of the county court for Franklin County, Kansas; and the defendants Joe Ferns, Jack E. Davis, and Victor E. Warren, individual members of the Board of County Commissioners of Franklin County. The instant dispute developed from an incident on January 7, 1975, when the plaintiff arrested Michael Allen for careless and inattentive driving in violation of the Ottawa city ordinances. Michael was again detained on January 13, 1975, when the plaintiff served upon him a notice to appear for a hearing on the traffic violation charge. Michael was released after signing the summons, but vowed as he departed that he would "get [the plaintiff's] badge." The next day, Michael's father James contacted the Ottawa Chief of Police and requested an investigation of the plaintiff's encounter with Michael on January 13th. The police chief interviewed Michael but declined to institute disciplinary proceedings against the plaintiff. James Allen, apparently dissatisfied with this disposition of his complaint, thereupon retained Latimer to defend Michael at the trial on his traffic charge. The plaintiff "believes" that James Allen also asked Latimer at that time to "pursue all avenues available to accomplish the filing of charges against plaintiff."

Latimer did agree to represent Michael and on January 21, 1975, on Michael's behalf, he entered a plea of not guilty to the traffic violation. On or about February 3, 1975, Latimer also approached county attorney Pinet and conveyed to him the Allens' desire to have the plaintiff prosecuted. Pinet apparently declined to do so personally, but either he or the Board of County Commissioners appointed Latimer a special prosecutor for Franklin County for a term lasting from February 3 to March 3, 1975. Latimer thereafter, on February 3, filed on behalf of the State of Kansas a criminal complaint charging the plaintiff with the criminal assault and battery of Michael Allen, in violation of K.S.A. §§ 21–3408 and 21–3412. On the basis of that complaint, Judge Nichols issued a warrant for the plaintiff's arrest. It is unclear whether the plaintiff was in fact ever arrested, but it does appear that the Ottawa police department suspended him with pay from the date of the warrant's issuance.

The plaintiff's trial commenced one week later, on February 10, 1975, before Judge Nichols. At and before trial the plaintiff registered various objections to alleged technical irregularities in the complaint and also challenged Latimer's legal capacity to prosecute him. These objections were overruled, together with the plaintiff's motion for dismissal of the charges at the close of the state's evidence. At the end of the first day of trial the case was continued until February 18, 1975. On February 14, 1975, however, the plaintiff instituted proceedings to remove the pending criminal action to this court and to obtain a permanent injunction against its further prosecution. In conjunction with his petition for removal, the plaintiff appended a claim for "appropriate relief" under 42 U.S.C. § 1983. On February 18, after oral argument by the parties, this court denied the plaintiff's motion for a temporary restraining order. In the meantime, the plaintiff's trial was apparently continued until February 27, 1975. At that time the plaintiff presented his defense and Judge Nichols found him not guilty of both charges. The plaintiff's prayer for permanent injunctive relief in this court was thereby rendered moot and on April 28, 1975, after a hearing and oral argument by the parties, this court granted the plaintiff leave to file the amended complaint which is the target of the instant motions to dismiss.

The plaintiff contends that the above facts establish that the defendants acted in concert under color of state law and conspired "to violate [his] federally protected rights, guaranteed to him under the Fifth and Fourteenth Amendments to the United States Constitution," in that "it was the sole purpose and effect of the defendants' actions in initiating such prosecution to harass plaintiff, to

conspire to imprison and prosecute him so as to injure the plaintiff in his person and his property because of his lawful discharge of the duties of his office as a policeman." The plaintiff has declined numerous opportunities to further identify the precise constitutional rights allegedly in issue here; when invited by the defendants to do so, he has merely invoked the above-quoted language, which rings like a refrain through his numerous pleadings and briefs. Accordingly, the court's inquiry in determining whether the complaint states a cause of action in light of the facts alleged must of necessity focus rather closely on this particular language.

▆▆▆ As a preliminary matter, it appears that in resisting the defendants' motions to dismiss, the plaintiff has placed significant emphasis on the holdings of *Jones v. Hopper,* 410 F.2d 1323 (10th Cir. 1969), and *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), to the effect that a civil rights complaint should not be dismissed unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." The plaintiff's apparent misinterpretation of the precise import of this general rule in the context of the instant case, however, warrants some comment. It is axiomatic that some claim regarding the "rights, privileges, or immunities" of federal citizenship is necessary—and to a large degree is also sufficient—to sustain a cause of action under the provisions of the Civil Rights Act that are invoked here. A dispute regarding the alleged deprivation of such a constitutional right is necessary because it is an express prerequisite of federal jurisdiction under 28 U.S.C. § 1343. Further, if the deprivation of such a constitutional right is alleged, the complaint will generally be sufficient under *Conley, Jones,* and other cases, to withstand a motion to dismiss under Rule 12 or a motion for summary judgment under Rule 56. *E. g., Keenan v. Looney,* 227 F.2d 878 (10th Cir. 1955); *Dewell v. Lawson,* 489 F.2d 877 (10th Cir. 1974).

It should be clear, however, that the standard for dismissal set forth in *Conley et al.,* does not become operative unless a privilege or right secured by the Constitution is identified and put into issue by the allegations of the complaint; that is, *if* the denial of a specific constitutional right is alleged, the action should not be dismissed unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." This rule is not unique to civil rights complaints; it is in many ways merely a corollary of the fact that while Rule 8(a)(2) of the Federal Rules of Civil Procedure requires the plaintiff to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," a claimant is not required to set out in the complaint a detailed accounting of all facts on which that claim may be based. *Conley,* 355 U.S. at 47, 78 S.Ct. at 102, 2 L.Ed.2d at 85.

Contrary to the plaintiff's apparent belief, however, *Conley et al.,* do not stand for the converse proposition that, if a complaint alleges myriad facts but does not identify the specific constitutional right allegedly implicated in those facts, dismissal is inappropriate unless it appears beyond doubt that the plaintiff can conjure up no constitutional claim on the basis of the facts alleged or on the basis of any other set of facts which might conceivably be proved. Application of such a standard would accord civil rights complaints a favored status clearly unwarranted by the rules of civil procedure and the relevant case law, *e. g., Jones v. Hopper, supra,* at 1327, for it would confer upon them a virtual immunity to dismissal. In addition, the use of such a standard would directly contravene the requirement of Rule 8(a)(1) that a complaint must set forth a "short and plain statement of the grounds upon which the court's jurisdiction depends." Thus, while we do not mean to unduly belabor this relatively elementary point, *Conley* and its progeny in no way detract from the fundamental rule that the sufficiency of the complaint must be

gauged by whether it states a colorable deprivation of a right secured by the Constitution or laws of the United States, and it is to this question that we now turn.

The scope of the protection accorded to individual freedoms and liberties by 42 U.S.C. §§ 1983, 1985, and 1986, is not without limits. It is therefore perhaps helpful to delineate those rights that are not within the purview of these sections. First, while the Civil Rights Act confers a right of action sounding in tort upon every individual whose federal rights are trespassed upon by any person acting "under color of state law" or by any group of citizens acting in conspiracy, *Bottone v. Lindsley*, 170 F.2d 705 (10th Cir. 1948), it is clear that not all violations of state law rise to the level of a "constitutional tort" for purpose of the civil rights statute. *E.g., Ouzts v. Maryland Nat'l Ins. Co.*, 470 F.2d 790 (9th Cir. 1972); *Street v. Surdyka*, 492 F.2d 368 (4th Cir. 1974); *Ortega v. Ragen*, 216 F.2d 561 (7th Cir. 1954); *Mueller v. Powell*, 203 F.2d 797 (8th Cir. 1953); *Picking v. Pennsylvania R. Co.*, 151 F.2d 240 (3rd Cir. 1945); *United States v. Classic*, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368 (1940); *Screws v. United States*, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1944). An individual's right to have the relevant state laws strictly obeyed is not a federal right protected by the Civil Rights Act of 1871 or the Constitution of the United States. *E.g., Saunders v. Cahill*, 359 F.Supp. 79 (N.D.Ill.1973); *Nationwide Amusements, Inc. v. Nattin*, 325 F.Supp. 95 (W.D.La.1971); *Kelly v. Wyman*, 294 F.Supp. 893 (S.D.N.Y.1968); *Love v. Navarro*, 262 F.Supp. 520 (C.D. Cal.1967). Nor does the Civil Rights Act provide a remedy for mere common law torts, even when committed "under color of state law." *E.g., Street v. Surdyka*, *supra*; *Bolden v. Mandel*, 385 F.Supp. 761 (D.Md.1974); *Sheffey v. Greer*, 391 F.Supp. 1044 (E.D.Ill.1975); *Davidson v. Dixon*, 386 F.Supp. 482 (D.Del.1974); *Kent v. Prasse*, 385 F.2d 406 (3rd Cir. 1967). In construing the scope of the federal civil rights act, federal courts

have been cautioned to guard against being "so overzealous in their desire to protect individual rights from State abuse that they unjustifiably deprive the States of their inherent sovereignty, also protected by the United States Constitution." *Egan v. City of Aurora*, 174 F.Supp. 794 (N.D.Ill.1959). The protection of rights derived purely from state law and incident to state rather than federal citizenship is therefore beyond the pale of both federal court jurisdiction and the substantive remedial provisions of the Civil Rights Act. *E.g., Miles v. Armstrong*, 207 F.2d 284 (7th Cir. 1953); *Egan, supra*. Finally, in resolving whether a particular right asserted by a plaintiff does fall within the protective ambit of the Civil Rights Act, federal courts are guided by the following factors regarding the proper balance between the respective roles of the state and federal governments in the enforcement of state laws:

"In addition to being alert for possible abusive use of the Civil Rights Acts, the federal courts should also consider the need for federal supervision of the type of official conduct involved. Where the States have reasonably effective safeguards or remedies, a restrictive reading of the Acts is called for. The theory of the action should also be considered in deciding how strictly to construe the Acts. If the theory is merely one of tort then the Acts should be construed strictly but if the theory is to alter official conduct, a more liberal construction may be called for. If the action is for individual redress, then the Acts should be construed more strictly than in a broad class action which would be more in keeping with the philosophy of the Acts." *Egan, supra*, at 800.

In the case now before the court, the gist of the plaintiff's claim is that he was subjected to "the initiation of criminal proceedings . . . without just cause." (Plaintiff's Amended Complaint, page 2, ¶ 4). More specifically, it is alleged that the actions of the defendants (a) deprived the plaintiff of his rights

under the Fifth and Fourteenth Amendments of the Constitution; (b) harassed the plaintiff; (c) injured the plaintiff in his person and property; and (d) were done for the sole purpose of persecuting the plaintiff on account of his lawful performance of his duties as a policeman. (Plaintiff's Amended Complaint, page 6 ¶ 13). As we noted earlier, the plaintiff's amended complaint and accompanying memoranda offer no further explication of the precise constitutional rights allegedly at issue. In conjunction with his original complaint, however, the plaintiff did specify two particular theories—which we shall discuss but which are apparently now abandoned—in support of his claimed deprivation of Fourteenth Amendment rights. These theories were that the plaintiff was deprived of both "liberty" and "property" as defined in *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), because the actions of the defendants damaged his standing in the community and extinguished his legitimate claim of entitlement to government employment. (Plaintiff's Reply, document 16, page 6).

After thoroughly reviewing the relevant legal authorities and the pleadings in this case, the court concludes that the complaint fails to allege a colorable deprivation of any right secured by the Constitution or laws of the United States. Accordingly, for the following reasons, the action must be dismissed.

First, with reference to the claimed deprivation of rights secured by the Fifth Amendment of the Constitution, the allegations of the complaint appear to be both highly conclusory and devoid of factual support. A plaintiff in a civil rights action is required to set forth alleged misconduct and resultant harm in a way which will permit an informed ruling whether the wrong complained of is of federal cognizance. *Rodes v. Municipal Authority,* 409 F.2d 16 (3rd Cir. 1969). Mere conclusory allegations that unspecified constitutional rights have been infringed—precisely the kind of Fifth Amendment allegations we

have here—will not suffice to state a claim upon which relief can be granted under the Civil Rights Act. *E.g., Robinson v. McCorkle,* 462 F.2d 111 (3rd Cir. 1972); *Hill v. McClellan,* 490 F.2d 859 (5th Cir. 1974).

Second, the claims based upon the alleged denial of rights secured by the Fourteenth Amendment are equally insufficient to state a cause of action. *Roth* did not hold that the impairment of an individual's reputation or standing in his community by one acting under color of state law gives rise to an action for damages under the Civil Rights Act. Indeed, it is well established that libel or slander by a state official—even if malicious—does not generate a cause of action under the federal civil rights statutes, for the right to be free of defamation and to secure redress for its infliction is within the province of state law and is not an incident of federal citizenship. *E.g., El-Em Band of Pomo Indians v. 49th District Agricultural Fair Ass'n,* 359 F.Supp. 1044 (N.D.Cal.1973); *Mimms v. Philadelphia Newspapers, Inc.,* 352 F. Supp. 862 (E.D.Pa.1972); *Schumate v. People of State of New York,* 373 F. Supp. 1166 (S.D.N.Y.1974); *Hahn v. Sargent,* 388 F.Supp. 445 (D.Mass.1975). Thus, even if we accept the plaintiff's allegation of injury to his reputation—and we would parenthetically note that the complaint is wholly devoid of any specific facts evidencing the truth of that allegation—we must conclude that such an injury does not rise to the level of a "constitutional" tort for which the Civil Rights Act provides a remedy.

The complaint is also insufficient to state a cause of action based on the denial of a "property" right secured by the Fourteenth Amendment. The very existence of any such "property" right is highly questionable here, for the complaint contains absolutely no factual basis for a claim that the plaintiff had any "legitimate claim of entitlement" to his employment as a city policeman. That legitimate expectation of continued employment is clearly necessary under

*Roth* to trigger the protective provisions of the Fourteenth Amendment. 408 U.S. at 577, 92 S.Ct. at 2709, 33 L.Ed.2d at 560. More importantly, however, even if such a property right could be proved, it is difficult to perceive any manner in which the plaintiff has been "deprived of" or "denied" any cognizable interest in that employment. In the court's mind, a temporary suspension with pay is a far cry from that "absolute deprivation" against which the Fourteenth Amendment protects. *San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 20, 93 S.Ct. 1278, 1289, 36 L.Ed.2d 16, 35 (1972). Further, even assuming that the plaintiff had suffered the claimed "extinguishment" of a constitutionally-protected property right, we must assume that his suspension resulted from the policies and acts of his employer and not as a direct and inevitable consequence of the defendants' actions; it is therefore highly questionable whether the acts of the defendants could be legally held to be the proximate cause of his injury. See *Whittington v. Johnston,* 201 F.2d 810 (5th Cir. 1953). Finally, the Fourteenth Amendment does not absolutely prohibit the denial of "life, liberty, or property," but only protects against such deprivation "without due process of law." No due process issue is expressly raised by the complaint, and the court is unable to discern the existence of any such issue in the factual allegations. We cannot stretch the allegations of the plaintiff's complaint so far as to hold that they raise any issue as to whether the plaintiff's suspension was accomplished in a manner consonant with due process. Further, we fail to see any justiciable due process issue relating to the plaintiff's criminal trial in the county court. Any argument based on a denial of due process in that forum would indeed be anomalous, for the plaintiff apparently endorses the verdict of acquittal rendered by that court. More importantly, however, it is a fundamental rule that if the state criminal procedure actually affords the character of due process contemplated by the Constitution, and is followed, there is no de-

nial of right under the Constitution. *E.g., Smith v. State of Texas,* 311 U.S. 128, 61 S.Ct. 164, 85 L.Ed. 84 (1940); *Hill v. Texas,* 316 U.S. 400, 62 S.Ct. 1159, 86 L.Ed. 1559 (1941); *Mueller v. Powell,* 203 F.2d 797 (8th Cir. 1953). Of course, if the legally established state procedures are violated to the extent that the state court proceedings are rendered "a complete nullity," a cause of action under the Civil Rights Act may be stated. *E.g., Bottone v. Lindsley,* 170 F.2d 705 (10th Cir. 1948); *McShane v. Moldovan,* 172 F.2d 1016 (6th Cir. 1949). That Act does not provide relief from merely erroneous action by state judicial systems, however, nor does it guarantee uniformity of decisions. *Snowden v. Hughes,* 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1943) (Frankfurter, J., concurring); *Morgan v. Sylvester,* 125 F.Supp. 380 (S.D.N.Y.1954); *Spriggs v. Pioneer Carissa Gold Mines,* 251 F.2d 61 (10th Cir. 1957). To hold otherwise would open the door wide to every aggrieved litigant in a state court proceeding and set the federal courts up as arbiters of the correctness of every state decision. *Bottone, supra,* at 707. The court therefore finds that there is no factual foundation here for any asserted claim of denial of due process and that as a matter of law any violation of state law which may have occurred in the criminal prosecution of the plaintiff did not inflict an injury of constitutional magnitude that is cognizable under the Civil Rights Act.

The plaintiff here has sought to bring his claim within the purview of the Fourteenth Amendment by arguing that he was the victim of class-based discrimination; he claims that he was prosecuted solely because he was a member of a special class, *i. e.* police officers; and that he was further subjected to discrimination because the standards concerning the lawful performance of police duties were discriminatorily applied to him vis-a-vis other members of the Ottawa police department. This spurious attempt to fabricate a cause of action under 42 U.S.C. § 1985 warrants little comment. The alleged "class" of

policemen exhibits none of the traditional "indicia of suspectness" which might trigger strict scrutiny under the Fourteenth Amendment, *San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 28, 93 S.Ct. 1278, 1294, 36 L.Ed.2d 16, 40 (1972), and we are unhesitatingly convinced that in the context of the instant case anti-police bias does not constitute the kind of "class-based invidiously discriminatory animus" envisioned and prohibited by § 1985. *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338, 348 (1970). More importantly, however, even if a prohibited class-based discrimination were present, § 1985 would not provide a remedy in this case. That section is not a "general federal tort law," and it was not intended to reach all conspiratorial interferences with the rights of others. *Griffin, supra,* at 101, 102, 91 S.Ct. at 1798, 29 L.Ed.2d at 348. It provides redress for only such conspiratorial actions as have deprived the plaintiff of rights embodied in the Constitution and laws of the United States. *E.g., Ruark v. Schooley,* 211 F.Supp. 921 (D.Colo.1962), and cases cited *supra.* Because the court has searched in vain for any constitutional or federal statutory right which might plausibly be in issue here, the question of whether the defendants' actions were motivated by invidious class-based discrimination is moot. The following comments by the Supreme Court in *Collins v. Hardyman,* 341 U.S. 651, 71 S.Ct. 937, 95 L.Ed. 1253 (1950), are appropriate in this regard:

> "The only inequality suggested is that the defendants broke up plaintiffs' meeting and did not break up meetings of others with whose sentiments they agreed. To be sure, this is not equal injury, but it is no more a deprivation of 'equal protection' or of 'equal privileges and immunities' than it would be for one to assault one neighbor without assaulting them all, or to libel some persons without mention of others. . . . [The plaintiffs'] rights *under the laws* and to *protection of the laws* remain untouched and

equal to the rights of every Californian, and may be vindicated in the same way and with the same effect as those of any other citizen . . .." *Id.* at 661, 71 S.Ct. at 942, 95 L.Ed. at 1259.

In other words, a simple showing of unequal application of the law, even if malicious, does not establish a cause of action under § 1985. *E.g., Birnbaum v. Trussell,* 371 F.2d 672 (2nd Cir. 1966).

The plaintiff's remaining contentions, that the defendants "harassed" him and "injured him in his person and property," are clearly insufficient to state a claim under the Civil Rights Act and may be disposed of summarily. First, mere claims of emotional distress, harassment, mental anguish, humiliation, or embarrassment are not actionable under the Civil Rights Act. *E.g., Dear v. Rathje,* 391 F.Supp. 1 (N.D.Ill.1975); *Bolden v. Mandel,* 385 F.Supp. 761 (D.Mass.1974). Second, as noted above, the complaint avers no injury to any right of the plaintiff that is protected by the Constitution or laws of the United States. Thus, any cause of action to avenge the vaguely alleged injury to the plaintiff's "person and property" is not within the ambit of 42 U.S.C. §§ 1983 or 1985.

In light of what has been said above regarding §§ 1983 and 1985, it is clear that the complaint states no actionable claim under § 1986, for the latter applies only in the case of a person who has knowledge that an act mentioned in § 1985 is about to be done, has the power to prevent the same, and fails to act. *Azar v. Conley,* 456 F.2d 1382 (6th Cir. 1972); *Johnston v. National Broadcasting Co.,* 356 F.Supp. 904 (E.D.N.Y.1973); *Huey v. Barloga,* 277 F.Supp. 864 (N.D. Ill.1967).

Finally, the complaint fails to state a claim for relief under § 1988; that section did not create an independent cause of action to vindicate the violation of federal civil rights, nor did it authorize the wholesale importation into federal law of state causes of action.

*Moor v. County of Alameda,* 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1972).

Accordingly, for the reasons announced above, the court holds that on the facts alleged the complaint does not state a claim upon which relief can be granted under 42 U.S.C. §§ 1983, 1985, 1986, or 1988. The plaintiff's grievance here, succinctly stated, is that he was prosecuted without just cause. While this allegation might state a classic claim for relief under the tort theories relating to malicious prosecution, it is not justiciable under the Civil Rights Act. *E.g., Viles v. Symes,* 129 F.2d 828 (10th Cir. 1942); *Martin v. King,* 417 F.2d 458 (10th Cir. 1969); *Paskaly v. Seale,* 506 F.2d 1209 (9th Cir. 1974); *McShane v. Moldovan,* 172 F.2d 1016 (6th Cir. 1949); *Curry v. Ragan,* 257 F.2d 449 (5th Cir. 1958); *Bartlett v. Duty,* 174 F.Supp. 94 (N.D.Ohio 1959); *Graves v. City of Bolivar,* 154 F.Supp. 625 (W.D.Mo.1957); *Hahn v. Sargent,* 388 F.Supp. 445 (D.Mass.1975).

IT IS THEREFORE ORDERED that the defendants' motions to dismiss, which we have considered as motions for summary judgment, be sustained and that this action be dismissed at plaintiff's costs. Counsel for defendants shall prepare, circulate and present to the court an appropriate journal entry reflecting the foregoing memorandum and order.