499 F.2d 1140
 UNITED STATES of America, Appellee,
v.
William F. McGOVERN, Defendant, Appellant.
UNITED STATES of America, Appellee,
v.
Frank M. WOODS, Jr., Defendant, Appellant.
UNITED STATES of America, Appellee,
v.
Louis J. DiPIETRO, Defendant, Appellant.
UNITED STATES of America, Appellee,
v.
Alfred J. GOULETTE, Defendant, Appellant.
 Nos. 72-1356 to 72-1359.
 United States Court of Appeals, First Circuit.
 Argued Jan. 7, 1974.
Decided June 25, 1974.
 
 Joseph C. Delcore, Everett, Mass., with whom Alfred Paul Farese, Everett, Mass., was on brief, for appellants.
 Henry H. Hammond, Asst. U.S. Atty., with whom James N. Gabriel, U.S. Atty. of Boston, Mass., was on brief, for appellee.
 Before COFFIN, Chief Judge, ALDRICH and CAMPBELL, Circuit Judges.
 LEVIN H. CAMPBELL, Circuit Judge.
 
 
 1
 After a jury trial lasting 18 days William F. McGovern, Alfred J. Goulette, Frank M. Woods, Jr., and Louis J. DiPietro were found guilty of fraudulently making counterfeit Federal Reserve notes, in violation of 18 U.S.C. 471.[1] We discuss in turn appellants' contentions, none of which we find to warrant reversal.
 
 
 2
 Appellants complain that the government put leading questions to its principal witness, Raymond Scarino, the printer of the bills. Indicted with appellants, Scarino pleaded guilty before trial. His testimony was rambling, unresponsive and on occasion inconsistent, and the Assistant United States Attorney sometimes resorted to leading questions to which counsel for appellants strenuously objected. The court sustained many of the objections, admonished the prosecutor, and instructed and cautioned the jury. Cross examination of Scarino, much of it focussing on his vagaries and his relationship to the government, filled over 800 pages of transcript.
 
 
 3
 The evil of leading a friendly witness is that the information conveyed in the questions may supply a 'false memory'. United States v. Durham, 319 F.2d 590, 592 (4th Cir. 1963). 3 J. Wigmore, Evidence 769 et seq. (Chadbourne rev. 1970). In spite of this danger, however, leading questions sometimes must be tolerated if what the witness knows is ever to become available: the witness' memory may be temporarily exhausted; the witness may be disoriented or incapable of concentration; the witness may misunderstand what the questioner wants to know. On those and other occasions some degree of leading, skirting the fine line between stimulating an accurate memory and implanting a false one, may be allowed; because the circumstances vary from case to case, and because the trial judge is best situated to strike a practical and fair balance, he has extensive discretion over the phrasing of questions. 3 J. Wigmore, supra at 770.
 
 
 4
 But appellants contend that the questioning was here so grossly suggestive as to be beyond the pale. Cf. Nurnberger v. United States, 156 F. 721, 731-735 (8th Cir. 1907). We do not agree. The district court was assiduous and in large part successful in keeping examination within bounds. It is true that even if the answer is excluded, a question may already have done its harm by telegraphing information. But improper questions, singly or cumulatively, were neither so suggestive nor so numerous as to seem capable of restructuring Scarino's memory. Moreover, given Scarino's unusual disorientation the government was entitled to some leeway in trying to focus his attention on relevant matters. Viewing his entire testimony, we think the jury, having been cautioned repeatedly against the dangers of leading and having the benefit of exhaustive cross examination, remained able to weigh his testimony and credibility.
 
 
 5
 Next, appellants complain of the government's failure to amend its bill of particulars before trial so as to show that Scarino had been guided to Wellington Circle not by DiPietro, as represented in the four-page bill filed six months before the trial, but by one Elaine Spina. Scarino had changed his story after the bill was filed, but the prosecutor neglected to furnish the defense with this information. The correct information came out, however, in the government's opening statement and also, on the second day of trial, in Scarino's testimony. Nearly a week later the defense sought a mistrial, saying it might have investigated Spina had it known of her claimed involvement. In denying the motion for mistrial, the district court emphasized that it did not condone the government's oversight but found the failure to correct the driver's name earlier of insufficient magnitude for a mistrial. The defense never sought to call Elaine Spina nor did it represent that it could not find her. The government, indeed, offered to assist in locating her; and according to Scarino she was a friend of McGovern's. We find no abuse of discretion. From the government's apologetic explanation, the court could believe that the prosecutor had not designedly withheld the information. And as the correct version was disclosed at the very outset of a trial which was to continue for three weeks, the defense had time to check into Spina's possible value as a witness. As we said in United States v. DeLeo, 422 F.2d 487, 499 (1st Cir.), cert. denied, 397 U.S. 1037, 90 S.Ct. 1355, 25 L.Ed.2d 648 (1970).
 
 
 6
 'Keeping in mind that the prosecutor's duty of disclosure is imposed to insure fairness to the accused rather than to punish the prosecutor or the public, Brady v. Maryland, supra, 373 U.S. (83) at 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 . . . we believe the absence of conceivable prejudice tothe accused completely disposes of his objection.'
 
 
 7
 For the same reason we find no merit in appellants' complaint that the government improperly delayed releasing information about rewards promised to Mary Dunkman in return for her testimony. During redirect examination the Assistant United States Attorney, as he was duty bound, see Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), made it known that Dunkman had been promised a favorable letter to state authorities. Appellants say that disclosure came too late, especially in view of their pretrial request for disclosure of rewards and inducements. But the witness was still on the stand, and the court allowed the defense further cross examination. See United States v. Harris, 498 F.2d 1164 (3d Cir. 1974). There was no prejudice, and there were circumstances from which the court could have believed that the government's delay until the eleventh hour was not calculated. Cf. United States v. Gerard, 491 F.2d 1300 (9th Cir. 1974) (Aldrich, J.).
 
 
 8
 Appellants' next contention concerns the introduction into evidence of sheets of ten dollar bills. Because Scarino mistakenly testified on recross examination that these were stored in a cellar box and turned over to federal agents, appellants assert the government used 'false testimony.' Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). But when the exhibit was offered the prosecutor had told the court and opposing counsel that an agent had purchased the sheets from men named Magro and Moran. Other evidence contrary to Scarino's testimony was introduced by the government. Napue forbids knowing reliance upon false evidence, including false evidence bearing upon credibility. But the government is not forbidden to call witnesses whose reliability in one or many particulars is imperfect or even suspect. Its obligations are to make a clean breast of any evidence it has which may contradict such witnesses or undermine their credibility, and not to rest its case upon testimony which it believes to be incorrect. The government here presented what, insofar as we know, was the correct version. It never offered Scarino's version as part of its case in chief. The government was not responsible for Scarino's lapses on cross examination nor for the defense's use or non-use of the correct information earlier disclosed.
 
 
 9
 It is further contended that the government was slow in delivering certain Jencks Act materials, thus hampering cross examination. Suffice to say that the record reveals material compliance with the Jencks Act with the possible exception of several occasions when a small amount of material was revealed after the commencement of cross examination but before its close. These incidents, which were resolved without apparent prejudice to the defense and were not of such magnitude as to suggest bad faith on the government's part, are not grounds for reversal. United States v. Principe, 499 F.2d 1135 at 1139 (1st Cir. 1974). Cf. Comment, Brady v. Maryland and the Prosecutor's Duty to Disclose, 40 U.Chi.L.Rev. 112, 117-20 (1972).
 
 
 10
 Appellants suggest that even if none of the points so far mentioned amount to reversible error, they cumulatively raise 'a very serious question . . . as to whether the defendants could possibly have had a fair trial'. But the cumulative strength of the points so far raised seems to us no greater than the sum of the parts. The trial was conducted with elaborate patience by the judge who, confronted with vigorous activity on the part of the defense as well as a number of difficulties not the least of which was Scarino's inarticulateness, went to great lengths to be fair to the four defendants.
 
 
 11
 Nonetheless, citing cases of improper judicial intrusion, see, e.g., United States v. Grunberger, 431 F.2d 1062 (2d Cir. 1970), appellants claim reversible error because the court asked Secret Service Agent Gerald Bechtele what he meant when he said he had 'faith' in Scarino. The inquiry followed questioning by all three defense counsel on the same subject, which had been raised by one of them. The court said that Bechtele's prior assertion of faith was a 'rather vague statement' and asked him to tell the jury 'to what extent you did and to what extent, if any you did not and what you meant . . .' The court asked for nothing not already put in issue by the defense, its own questions were impartially framed, and the answers verged on the trivial. Cf. Quercia v. United States, 289 U.S. 466, 470, 53 S.Ct. 698, 77 L.Ed. 1321 (1932). A federal judge has 'the right, and often the obligation, to interrupt the presentations of counsel in order to clarify misunderstandings or otherwise insure that the trial proceeds efficiently and fairly.' United States v. Cole, 491 F.2d 1276, 1278 (4th Cir. 1974). We find no abuse of discretion, and certainly no prejudice.
 
 
 12
 Over defense objection, the government presented testimony that about a month after delivery DiPietro sold some of the same bills Scarino had printed for McGovern. DiPietro now contends that this evidence should have been excluded because he was being charged with participation in the making, not selling. The later crime, however, was germane to the one charged. Sale a short time later of the same bills which Scarino claimed he had delivered to McGovern in DiPietro's presence was strongly corroborative of Scarino's testimony. It also was evidence that DiPietro's presence, otherwise shown, during certain phases of the making activities was not innocent; it could be inferred that he was actively associated with McGovern in a common scheme to make and later sell the counterfeit notes. See United States v. Hopkinson,492 F.2d 1041, 1043 (1st Cir. 1974). Evidence 'otherwise relevant is not rendered inadmissible merely because its tendency is to prove the commission of some other crime.' Green v. United States, 176 F.2d 541, 543 (1st Cir. 1949).
 
 
 13
 Appellants' final point is that the evidence of guilt was insufficient to go to the jury, and that the court should have entered a judgment of acquittal for all four defendants. Alleged deficiencies in the evidence against DiPietro and Wood are especially cited. But viewed in its aspect most favorable to the government, the evidence was adequate to support the jury's verdicts in each instance. While Scarino's testimony was inconsistent in some of its details, its cumulative effect was not unconvincing, and it was supported at key points by other evidence.
 
 
 14
 Affirmed.
 
 
 
 [1]
 There were four counts in the indictment, each relating to a separate 'batch' of $20 or $10 notes. The illegal activity in Count I was allegedly in or about July, 1970; that in Counts II and III was 'subsequently in 1970'; and that in Count IV was in or about November, 1970. While McGovern and Goulette figured in each count, Woods appeared only in the first two, and DiPietro only in the last two and in the first