Robert C. HAHN, Plaintiff,

v.

Francis W. SARGENT et al.,
Defendants.

Civ. A. No. 74–1908–T.

United States District Court,
D. Massachusetts.

Jan. 10, 1975.

Alex Prasinos, pro se.

Kenneth Behar, Asst. Atty. Gen., Boston, Mass., for defendants.

Morrison, Mahoney & Miller, Alan H. Robbins, Boston, Mass., for defendant Miller.

Reade, O'Rourke & Marino, Francis J. O'Rourke, Braintree, Mass., for plaintiff.

Michael Eby, Deputy Asst. Atty. Gen., Boston, Mass., for defendants Quinn, Irwin and Rowe.

Paul B. Galvani, and Thomas G. Dignan, Jr., Sp. Asst. Attys. Gen., Boston, Mass., for defendants William I. Cowin and John G. Ryan.

Hiller B. Zobel, Sp. Asst. Atty. Gen., Boston, Mass., for defendant Francis W. Sargent.

Alfred J. DiSciullo, Jr., Boston, Mass., for defendant Wendell Berman.

448

## OPINION AND ORDER

TAURO, District Judge.

Plaintiff, a former chairman of the Republican State Committee, brings this action against nine defendants whom he alleges acted individually, or with varying degrees of cooperation, to deprive him of his rights under the First and Fourteenth Amendments to the United States Constitution. The nine defendants and the positions they held during the period of time covered by this complaint are:

Francis W. Sargent, Governor of Massachusetts;

Robert H. Quinn, Attorney General of Massachusetts;

William I. Cowin, Secretary of Consumer Affairs;

John G. Ryan, Commissioner of Insurance;

John J. Irwin, Assistant Attorney General;

Harvey F. Rowe, Assistant Attorney General;

Wendell Berman, Holder of the Controlling Interest, Rockland Mutual Insurance Company; [1]

Alan G. Miller, General Counsel, Rockland Mutual Insurance Company;

Alex Prasinos, Trial Counsel, Rockland Mutual Insurance Company.

Jurisdiction is based on 28 U.S.C. § 1343. Each of the amended complaint's four counts alleges violation of a different section of Title 42 of the United States Code (viz: §§ 1983, 1985(2), 1985(3), 1986). The defendants have each moved to dismiss the amended complaint or, in the alternative, for summary judgment. On December 13, 1974, after an extended hearing, defendants' motions were taken under advisement.[2]

According to the allegations of the complaint, plaintiff was elected Massachusetts Republican State Chairman in November, 1971. In mid-February, 1972, he met at least once with the defendant Commissioner Ryan to express his interest in a pending application of the Rockland Mutual Insurance Company to write bodily-injury automobile liability insurance in the Commonwealth.

On February 28, 1972, following his meeting with Ryan, plaintiff and Attorney James T. Kirk, now deceased, reported to the defendant Berman, of Rockland Mutual, that the company's application prospects appeared favorable. Berman, however, had never requested that plaintiff intercede with respect to the company's application and reported plaintiff's activities to defendant Miller, Rockland's General Counsel.

On March 2, 1972, Miller received a copy of Ryan's tentative decision granting the Rockland application, subject to a number of conditions.[3] The next day, Miller met with Ryan and expressed his distress at the activities of Hahn and Kirk. Ryan reported this conversation to his superior, Secretary Cowin, who met personally with Miller and Berman on March 16. During that meeting, Miller and Berman claimed that plaintiff had demanded Berman pay him $75,000.00 in cash and also purchase $5,000.00 worth of tickets to political fund-raising events, apparently as compensation for his services.

A few weeks later, on March 31, 1972, Ryan re-opened the hearing on the Rock-

1. There is some confusion in the record as to Mr. Berman's position. At this stage in the proceedings, the court accepts the factual allegations of the complaint on this and other points as true.

2. At an earlier hearing, the plaintiff moved to amend his complaint after some of the defendants had moved to dismiss. The court allowed plaintiff's motion to amend (Fed.R. Civ.P. 15(a)), but then rescheduled the hearing in order to give the defendants additional time to consider their motions in light of the amended complaint. In the period between the hearings, the pending motions were filed.

3. There is no indication that the Commissioner's decision resulted from plaintiff's intervention. Indeed, a review of the uncontradicted Grand Jury Testimony of Commissioner Ryan reveals that the decision on the Rockland application had been made before plaintiff contacted Mr. Ryan.

land application.[4] At this hearing, Cowin testified as to his conversations with Miller and Berman. Final approval of the Rockland application was announced by Commissioner Ryan on May 31, 1972.

Sometime after his meeting with Berman and Miller, but before Ryan re-convened the Rockland hearings, Cowin submitted a written report on the alleged activities of plaintiff and Kirk to Governor Sargent who, in turn, transmitted the information to Attorney General Quinn. After an investigation by the Attorney General's office, plaintiff and Kirk were indicted in mid-June, 1972 by a Suffolk County Grand Jury for their alleged activities in connection with the Rockland application. Both were acquitted on March 5, 1974, following a Superior Court bench trial.

Plaintiff was defeated for re-election as Republican State Chairman in May, 1972.

Plaintiff now brings this action charging that the activities of the defendants which led to his indictment constituted violations of his constitutional rights. He broadly alleges that he was the victim of malicious prosecution, knowing use of false and perjured testimony, deliberate suppression of exculpatory evidence and "intentional conspiracy." He seeks $6,000,000.00 compensatory and $2,000,000.00 punitive damages, as well as costs.

I

Each defendant seeks dismissal of counts 3, 2 and 4 (for purposes of convenience they will be discussed in that order) on grounds that the plaintiff is not within the class of persons protected by the provisions of the Civil Rights Act cited therein. This court agrees.

Count 3 alleges that the defendants' activities give the plaintiff a claim under 42 U.S.C. § 1985(3). In order to come within the terms of that section, however, plaintiff must allege that the defendants did (1) "conspire or go in

disguise on the highway or on the premises of another" and (2) did so "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." Griffin v. Breckenridge, 403 U.S. 88, 102–103, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). Count 3, however, is devoid of any such allegations.

Indeed, the basis of count 3 is that the plaintiff as an *individual* was singled out for harm by these defendants because of his "militant republicanism" as opposed to any allegation that the defendants' activities were based upon racial or "otherwise class-based, invidiously discriminatory animus." 403 U.S. at 102, 91 S.Ct. at 1798; Bricker v. Crane, 468 F.2d 1228, 232–33 (1st Cir. 1972). *See* Hughes v. Ranger Fuel Corporation, 467 F.2d 2 (4th Cir. 1972).

Count 2 also fails to state a claim on which relief can be granted. It alleges that the defendants conspired to obstruct justice in order to deprive the plaintiff of equal protection of the laws in violation of 42 U.S.C. § 1985(2). The courts which have faced the question, however, have recognized that § 1985(2) and § 1985(3) are "kindred sections of a common statutory scheme" (Phillips v. Singletary, 350 F.Supp. 297, 302 (D.S. C.1972)) and that racial or class-based discrimination is a condition precedent to invoking either provision. Kerckhoff v. Kerckhoff, 369 F.Supp. 1165, 1166 (E.D.Mo.1974); McIntosh v. Garofalo, 367 F.Supp. 501, 505 (W.D.Pa.1973); Boulware v. Battaglia, 327 F.Supp. 368, 371 (D.Del.1971); Kitchen v. Crawford, 326 F.Supp. 1255, 1261–1262 (N.D.Ga. 1970), aff'd, 442 F.2d 1345 (5th Cir.), cert. denied, 404 U.S. 956, 92 S.Ct. 318, 30 L.Ed.2d 272 (1971). Accordingly, Count 2 must also be dismissed.

Count 4 alleges a claim under 42 U.S.C. § 1986. That section creates an additional cause of action for refusal to take affirmative action in certain cir-

---

**4.** A previous set of hearings had been held in January, 1972.

cumstances to prevent the commission of an act giving rise to a claim under § 1985. No claim lies under § 1986, however, except on the basis of a valid claim under § 1985. Johnston v. National Broadcasting Co., Inc., 356 F.Supp. 904 (E.D.N.Y.1973); Post v. Payton, 323 F.Supp. 799 (E.D.N.Y.1971); Huey v. Barloga, 277 F.Supp. 864 (N.D.Ill.1967). Because the amended complaint does not state a valid claim under § 1985 it cannot state one under § 1986. For that reason Count 4 must also be dismissed.

## II

■ Count 1 alleges that the defendants deprived the plaintiff of his civil rights in violation of 42 U.S.C. § 1983. Section 1983 is broader in scope than section 1985 in that it affords protection against violation of any rights secured by the Constitution, not merely those stemming from racial or other types of class-based discrimination. Hoffman v. Halden, 268 F.2d 280, 293–294 (9th Cir. 1959); Daly v. Pedersen, 278 F.Supp. 88, 91 (D.Minn.1967).[5] Section 1983, however, is not so broad as to allow a plaintiff to escape a motion to dismiss merely by alleging that "defendant's conduct deprived plaintiff of his constitutional rights." Snowden v. Hughes, 321 U.S. 1, 10, 64 S.Ct. 397, 88 L.Ed. 497 (1944); Powell v. Jarvis, 460 F.2d 551, 553 (2d Cir. 1972); Moran v. Bench, 353 F.2d 193 (1st Cir. 1965); Dunn v. Gazzola, 216 F.2d 709, 711 (1st Cir. 1954); Yglesias v. Gulfstream Park Racing Ass'n, 201 F.2d 817 (5th Cir. 1953). The complaint must also allege *facts* which support its allegations and which, if believed, would show (1) that the defendant was acting under color of state law and (2) that his conduct deprived the plaintiff of a right which is actually protected by the Constitution. *See* El Mundo Inc. v. Puerto Rico Newspaper Guild, Local 225, 346 F.Supp. 106, 113 (D.P.R.1972); Daly v. Pedersen,

278 F.Supp. 88, 94 (D.Minn.1967). *See also* Valley v. Maule, 297 F.Supp. 958, 960–961 (D.Conn.1968). *Compare* Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) *with* Griffin v. Breckenridge, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). As the court noted in McGuire v. Todd, 198 F.2d 60 (5th Cir. 1953):

> It is sufficient for us in this case to say: that, as other courts have done, we disregard, as mere conclusions, the loose and general, the factually unsupported, characterizations of the complained of acts of the defendants, as malicious, conspiratorial, and done for the purpose of depriving plaintiffs of their constitutional rights; that [if] *the things defendants are alleged to have done,* as distinguished from the conclusions of the pleadings with respect to them, do not constitute a deprivation of the civil rights of plaintiffs, [they] do not give rise to the cause of action claimed . . . .

198 F.2d at 63 (emphasis supplied).

In the instant case, the charges against the individual defendants vary. Out of necessity, therefore, the court will examine the things which each defendant is alleged to have done in order to determine whether the allegations against that defendant are sufficient to survive the pending motions. *See* Symkowski v. Miller, 294 F.Supp. 1214 (E.D.Wis.1969).

### JOHN J. RYAN

■ The complaint alleges that Ryan (1) held a hearing on the Rockland application for the purpose of airing false charges made against the plaintiff; (2) permitted testimony at that hearing which he knew to be false; and (3) gave false testimony to the Suffolk County Grand Jury when that body was investigating charges against the plaintiff.

---

5. Nor does section 1983 require a showing of conspiracy, although a conspiracy to violate section 1983 is actionable under the statute. *See, e. g.,* Birnbaum v. Trussell, 371 F.2d 672 (2d Cir. 1966); Hoffman v. Halden, 268 F.2d 280 (9th Cir. 1959); Ames v. Vavreck, 356 F.Supp. 931 (D.Minn.1973).

Assuming *arguendo* that Ryan's activities were done under color of state law,[6] plaintiff has not cited, nor has this court found, authority for the proposition that the convening of an administrative hearing by a Commissioner of Insurance under these circumstances violated plaintiff's civil rights. The hearing was not called to initiate action against plaintiff. No charges were filed against him, nor was his name mentioned at any stage in the proceedings. Compare Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). The fact that the practical impact of the hearings was to increase public awareness of activities which were later attributed to plaintiff, does not amount to a violation of plaintiff's constitutional rights.

Moreover, there was ample cause for Ryan to convene the hearing. *See* Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1966) (probable cause may offer a defense for public officials sued for their official actions under § 1983). Following a ruling by the Supreme Judicial Court (Rockland Mutual Insurance Co. v. Comm. of Ins., [1971] Mass.Adv.Sh. 1883, 277 N.E.2d 493) Ryan was required to hold a full hearing and develop a "complete and informative record" before making a decision on the Rockland application. 277 N.E.2d at 499. In compliance with that mandate, Ryan had already held one hearing on the application in January, 1972, after which he had made a tentative decision to grant the application. In mid-March, however, charges against plaintiff and

Kirk came to his attention. At the very least, he then had to determine what effect, if any, those charges might have on his final decision. And, as a practical matter, he had to make that determination on the basis of some sort of public record. In view of these considerations, this court cannot conclude that Ryan abused his official discretion or otherwise violated plaintiff's civil rights.

Plaintiff next charges that Ryan "raised no protest" when Cowin testified falsely at the Commissioner's March hearing. Here again the plaintiff has not cited any authority for the proposition that this alleged nonfeasance rises to the level of a violation of constitutional rights. Nor has the plaintiff explained why the defendant in this situation should be subject to civil liability. The integrity of the fact-finding process was amply protected by the opportunity for Ryan to weigh the evidence before him and report possible irregularities to the Attorney General.

Moreover, neither the complaint nor the plaintiff's supporting affidavits specify those statements of Cowin's which were allegedly false.[7] *See* French v. Corrigan, 432 F.2d 1211 (7th Cir. 1970) (allegations of false testimony must be pleaded with particularity).

Finally, plaintiff alleges that Ryan perjured himself before the Grand Jury, although here too he fails to cite what portions of Ryan's testimony were false. Even if this allegation had been pleaded with particularity, however, it would also fail to state a claim under section 1983.

---

6. This court will also assume *arguendo* as well that the alleged activities of defendants Cowin, Sargent, Quinn, Irwin and Rowe were done under color of state law. *See* Wall v. King, 206 F.2d 878 (1st Cir. 1953).

7. Plaintiff mentions Cowin's testimony about a March 3 meeting with Miller and Ryan. At the hearing, Cowin testified as to his impression of Miller's mood at the March 3 meeting ("upset") as well as to his own, Cowin's, characterization of Rockland as an "innocent victim" which was also made at that time. Plaintiff alleges that Cowin's

testimony as to his earlier characterization of Rockland was false and that *Ryan knew* that testimony was false. The alleged basis for Ryan's knowledge, and therefore plaintiff's claim against him, is that when Ryan testified about this same meeting before the Grand Jury, he made no mention of Cowin's characterization. Ryan's uncontradicted affidavit as well as a certified transcript of his Grand Jury testimony reveal, however, that Ryan was never asked about how Cowin had characterized Rockland at the March 3 meeting.

**452**

Under Massachusetts law, a witness who gives false testimony before a grand jury is liable in a criminal action for perjury. Mass.Gen.Laws.Ann. ch. 268, § 1. He is not, however, liable for the same testimony in a civil suit since testimony in a judicial proceeding is privileged against defamation suits as a matter of public policy. Aborn v. Lipson, 357 Mass. 71, 256 N.E.2d 442 (1970); Mezullo v. Maletz, 331 Mass. 233, 118 N.E.2d 356 (1954). That same public policy also proscribes civil liability for false testimony under § 1983. Bryant v. Commonwealth of Kentucky, 490 F.2d 1273 (6th Cir. 1974).

## WILLIAM I. COWIN

The allegations against Cowin are listed chiefly in paragraphs 24–35 of the amended complaint. Essentially he is charged with: (1) damaging the plaintiff's reputation by testifying falsely before Ryan as well as preparing an inaccurate report on the Berman/Miller allegations to Sargent; and, (2) testifying falsely before the Suffolk County Grand Jury.

The first set of allegations represents a claim for defamation. Section 1983, however, does not provide a remedy for defamation claims. Gorman v. Lukowsky, 431 F.2d 971 (6th Cir. 1970); Heller v. Roberts, 386 F.2d 832 (2d Cir. 1967); cf. Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946); Yglesias v. Gulfstream Park Racing Ass'n, 201 F.2d at 818.

The second set of allegations represents an allegation of perjury. As mentioned above, § 1983 provides no remedy for that type of claim. Bryant v. Commonwealth of Kentucky, 490 F.2d 1273 (6th Cir. 1974).

## FRANCIS W. SARGENT

The complaint alleges that Sargent, having received information concerning "a shakedown attempt by plaintiff" (Amended Complaint ¶ 29), requested the official who first reported the incident to him to conduct an investigation (¶¶ 26–27); and that after receiving the report, Sargent forwarded it to the Attorney General. The complaint alleges that by his actions Sargent harmed the plaintiff's reputation and instigated criminal prosecution by the Attorney General.

The allegations against the Governor make out possible claims for defamation and malicious prosecution. Neither, however, are actionable under the Civil Rights Act. Curry v. Ragan, 257 F.2d 449 (5th Cir.), cert. denied, 358 U.S. 851, 79 S.Ct. 78, 3 L.Ed.2d 85 (1958); Yglesias v. Gulfstream Park Racing Ass'n, 201 F.2d 817 (5th Cir. 1953). See Monroe v. Pape, 365 U.S. 167, 240 n. 68, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) (Frankfurter, J.). Indeed, plaintiff is arguing that a Chief Executive, made aware of possible wrong doing, should keep the matter away from the prosecutor and attempt to deal with it himself. Both common sense and painfully recent history make it unlikely that § 1983 can be, or should be, extended that far.

## ROBERT H. QUINN
## JOHN J. IRWIN
## HARVEY F. ROWE

Plaintiff alleges that these defendants deprived him due process by: (1) maliciously instituting criminal proceedings against him; (2) deliberately using false and perjured testimony in state criminal proceedings against him; and (3) deliberately suppressing exculpatory evidence in the course of these proceedings.

A charge of malicious prosecution does not state a claim under the Civil Rights Act. See, e.g., Yglesias v. Gulfstream Park Racing Ass'n, 201 F.2d 817 (5th Cir. 1953). Even if such a claim were cognizable, however, the facts alleged in this complaint are not sufficient to survive a motion for summary judgment.

The gravamen of the plaintiff's allegation against the prosecutors is that in the course of their investigation, they developed "serious contradictions" in Berman's story. Plaintiff argues that these contradictions required the defendants to conclude that there was no probable cause on which to proceed against the plaintiff. This court disagrees.

 Plaintiff's characterization of the evidence developed during investigation as contradictory impliedly acknowledges that the state investigators had uncovered inculpatory evidence. Thus the plaintiff is really arguing that prosecutors, faced with conflicting evidence, are constitutionally required to disregard incriminating evidence and resolve all doubts in favor of the plaintiff. Unless a prosecutor knows inculpatory testimony to be false, the Fourteenth Amendment makes no such demand. Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); United States v. McGovern, 499 F.2d 1140, 1143 (1st Cir. 1974); Conner v. Deramus, 374 F.Supp. 504 (M.D.Pa.1974); Ray v. Rose, 371 F.Supp. 277 (E.D.Tenn.1974); cf. United States v. Cox, 342 F.2d 167 (5th Cir. 1965) (en banc).

 Moreover, the allegations of the complaint show that a grand jury found probable cause to indict Mr. Hahn. Viewing this factor against the background of the "prevailing view of tort law," (see Pierson v. Ray, 386 U.S. 547, 555, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1966)), such a finding affords these defendants a complete defense to a malicious prosecution claim. See Annota-

tion, Malicious Prosecution: Effect of Grand Jury Indictment on Issue of Probable Cause, 28 A.L.R.3d 748.

Plaintiff's second allegation against these defendants is that they knowingly procured perjured testimony in presenting the Commonwealth's case to the Grand Jury. The complaint, however, sets out neither the contents of the allegedly perjured testimony, nor the basis for the defendant's belief that any of it was false. Absent such factual allegations, the complaint contains only self-serving characterizations and conclusions which are insufficient to survive a motion for summary judgment.[8] Powell v. Jarvis, 460 F.2d 551, 552 (2d Cir. 1972); Symkowski v. Miller, 294 F. Supp. 1214, 1216–1217 (E.D.Wis.1969).

The final claim against the Attorney General and his assistants is that they deliberately withheld exculpatory evidence relevant to the plaintiff's criminal trial.[9] See Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Assuming arguendo that evidence was withheld at the trial and that such evidence was indeed exculpatory, the allegations in this complaint show no violation of due process.

 According to the complaint, the information which the plaintiff alleges was withheld was made available to the plaintiff nine days before the trial was completed. During that period, plaintiff and his counsel "had the use, knowledge and probative value of these reports for cross-examination of defendant Berman as well as for examination of other wit-

---

8. It is worthy of note that the plaintiff had access to the Grand Jury testimony both prior to and during his trial. According to the uncontradicted affidavit of defendant Rowe, neither the plaintiff nor his counsel called the trial judge's attention to any testimony which was allegedly false.

9. The defendants argue that because of various rulings by the state trial court, the plaintiff is now barred by principles of collateral estoppel from claiming that evidence which was allegedly withheld at the earlier

proceedings was exculpatory. Mastracchio v. Rico, 498 F.2d 1257 (1st Cir. 1974). In view of this court's disposition of the exculpatory evidence claim, there is no occasion to rule on this point. Of course, had such a ruling been necessary, this court would have been required to "examine the record of the antecedent case" in order to determine what points had been litigated and adjudicated there. That record, however, has not been introduced by any party. See Cardillo v. Zyla, 486 F.2d 473 (1st Cir. 1973).

nesses" (Amended Complaint ¶ 43). And, of course, plaintiff was acquitted of all charges against him. Accordingly, he has failed to show any prejudice or due process violation resulting from the defendant's alleged actions. *See* United States v. McGovern, 499 F.2d 1140 (1st Cir. 1974); United States v. Principe, 499 F.2d 1135 (1st Cir. 1974).

### WENDELL BERMAN
### ALAN G. MILLER
### ALEX PRASINOS

▮ Defendants Berman, Miller and Prasinos are named in the complaint presumably because of their alleged fabrication and dissemination of a false story accusing the plaintiff of an attempted shakedown. The plaintiff, however, has not alleged facts which show that the actions of any of these defendants were either done under color of state law (*see* Adickes v. Kress & Co., 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L. Ed.2d 142 (1970); United States v. Price, 383 U.S. 787, 793, 794, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966); Monroe v. Pape, 365 U.S. 167, 184, 187, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961)) or involved violations of *federally* protected rights. *See* Yglesias v. Gulfstream Park Racing Ass'n, 201 F.2d 817 (5th Cir. 1953). Accordingly, plaintiff has failed to state a claim against these defendants.

### III

▮ Finally, the plaintiff alleges that the individual defendants conspired to deprive him of his constitutional rights in violation of 42 U.S.C. § 1983. *See* Birnbaum v. Trussell, 371 F.2d 672 (2d Cir. 1966); Hoffman v. Halden, 268 F.2d 280 (9th Cir. 1959); Ames v. Vavreck, 356 F.Supp. 931 (D.Minn.1973). He does not make clear whether all the defendants were part of one conspiracy or whether a series of conspiracies involving different groups of defendants were allegedly operating simultaneously.[10]

▮ In analyzing conspiracy claims, courts must be cautious in labeling allegations of conspiracy as mere conclusions. Moran v. Bench, 353 F.2d 193, 195 (1st Cir. 1965); Hoffman v. Halden, 268 F.2d 280, 294 (9th Cir. 1959). "Nevertheless, by the bare use of the word 'conspiracy,' with no supporting facts that tend to show the existence of an unlawful agreement or prima facie improper behavior, plaintiff [cannot meet] the burden of countering affidavits making such explicit denials [of these allegations]." 353 F.2d at 195. *See also* Bryant v. Commonwealth of Kentucky, 490 F.2d 1273 (6th Cir. 1974); Scolnick v. Lefkowitz, 329 F.2d 716 (2d Cir.) cert. denied, 379 U.S. 825, 85 S.Ct. 49, 13 L.Ed.2d 35 (1964); Dunn v. Gazzola, 216 F.2d 709, 711 (1st Cir. 1954).

In the face of defendant's affidavits denying that a conspiracy existed here, plaintiff's complaint clearly fails that test. It alleges only that the defendants cooperated or "acted in concert" to harm the plaintiff in order to serve their own disparate aims. No facts are alleged which show that (1) a combination or agreement among any of the defendants was actually formed at any time or (2) that any of the defendants acted knowingly or willingly in furtherance of that agreement. Indeed, at oral argument before this court, the plaintiff maintained that it was sufficient to make out a conspiracy claim merely if the combined effect of the individual actions of the parties was harm to the plaintiff. Such an argument is without merit.

In conclusion then, this court holds that the plaintiff has failed to state a

---

10. Private persons who would not be liable under section 1983 if acting alone, come within this section's purview once they conspire with others who clearly are acting under color of state law. Gillibeau v. City of Richmond, 417 F.2d 426 (9th Cir. 1969); Luker v. Nelson, 341 F.Supp. 111 (N.D.Ill. 1972).

claim upon which relief can be granted against any of the named defendants. Defendants' motions to dismiss counts 2 through 4 and for Summary Judgment as to count 1 are therefore allowed.[11]

So ordered.

---

11. In memoranda accompanying their motions, defendants Ryan, Cowin, Sargent, Quinn, Irwin and Rowe discuss at some length the common law doctrine of executive immunity and its possible application to this case. In view of this court's holding, there is no occasion to consider the immunity defense as such. Of course, the application of that defense to § 1983 claims against state executive officials has yet to be "definitively explored" by the Supreme Court. Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).